IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | 1:20-cv-265-HSO |
| | § | 1:18-cr-37-HSO-JCG-1 |
| | § | |
| | § | |
| JULIO CHANTELLO WILLIAMS | § | |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT JULIO CHANTELLO WILLIAMS'S MOTION [69] UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

**BEFORE THE COURT** is the pro se Motion [69] of Defendant Julio Chantello Williams to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255. After due consideration of the Motion [69], the record, and relevant legal authority, the Court finds that Defendant Julio Chantello Williams's Motion [69] is not well taken and should be denied without an evidentiary hearing.

I. BACKGROUND AND PROCEDURAL HISTORY

A.  Defendant's guilty plea

On June 27, 2018, Defendant Julio Chantello Williams ("Defendant" or "Williams") entered into a written Plea Agreement [31] and a written Plea Supplement [32] (filed under seal)  (collectively, the "Plea Agreement") with the Government, and pleaded guilty to Counts 2 and 4 of the Indictment [15] in this case.  Count 2 of the Indictment charged that Defendant:

> having been convicted previously of a felony, that is, a crime which is punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm which had previously been shipped and transported in and affecting interstate commerce.
>
> In violation of Title 18, United States Code, Sections 922(g)(I) and 924(a)(2).

Indictment [15] at 1; Plea Agreement [31] at 1; Plea Supplement [32].  Count 4 of the Indictment [15] charged that Defendant:

> did knowingly and intentionally possess with intent to distribute 5 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

Indictment [15] at 2.  The Plea Agreement contained several written waivers, including a waiver of the right to contest the conviction and sentence or the manner in which the sentence was imposed in any post-conviction proceeding (including in a motion brought under 28 U.S.C. § 2255), except that Defendant reserved the right to raise ineffective assistance of counsel claims.  Plea Agreement [31] at 5-6; Plea Supplement [32].

     Under oath during the plea colloquy, Defendant and his counsel declared that the terms of the Plea Agreement and Plea Supplement were read by or to him, explained to him by his attorney, understood by him, and accepted and voluntarily agreed to by him.  Change of Plea Hearing, Digital Audio File [34].  The Court reviewed the waivers contained in the Plea Agreement with Defendant, and he stated under oath that he fully and completely understood, and knowingly and voluntarily agreed to, all of the waivers and the other terms of the Plea Agreement

2

and Plea Supplement.  *Id.*; Plea Agreement [31]; Plea Supplement [32].

During the change of plea hearing, the Government read into the record the factual basis supporting the plea:

> [O]n August 1, 2017, Gulfport Police foot patrol officers noticed a car playing loud music, and the smell of marijuana was noticed on approach. The driver, Julio Chantello Williams, had a tracker device on his wrist and a Smith & Wesson .40 caliber handgun in his lap. When he was removed from the car, a plastic bag of marijuana fell from his lap.
>
> \*\*\*
>
> At the time of his arrest on February 8, 2018, Defendant Williams was in the possession of three bags of suspected methamphetamine. Bag one tested at the HSI lab was confirmed as methamphetamine at 50 grams at a 56.1 purity level, for a net of 28.05 grams of actual methamphetamine. Bag two was confirmed not a controlled substance. Bag three was confirmed as methamphetamine but was an insufficient sample to determine purity. All together, Williams was in possession with intent to distribute of at least 102.56 grams of methamphetamine.
>
> Williams has been previously convicted of the felonies of auto burglary in Rankin County, Mississippi in 2001, possession of a controlled substance in Harrison County in 2009, and two separate indictments for charges of transfer of a controlled substance in Harrison County in 2011. He is, therefore, prohibited from possessing a firearm.
>
> The Smith & Wesson was manufactured in Massachusetts. The Walther was manufactured in Germany. Therefore, the guns were in and affecting interstate and foreign commerce.

Change of Plea Hearing, Digital Audio File [34]; Tr. of Plea Hearing [60] at 28-30.

To assist the Court in sentencing, a Presentence Investigation Report ("PSR") was prepared by the United States Probation Office.  *See* PSR [44] (filed under seal).  Due to Defendant's count of conviction involving possession with intent to

3

distribute a controlled substance, his conduct was analyzed under United States Sentencing Guidelines § 2D1.1. *See id.* at 12 (filed under seal). Due to the amount of illegal controlled substances involved, Defendant's base offense level was 30. *Id.* at 13. Because Defendant had possessed firearms, his offense level was increased by two levels pursuant to Guidelines § 2D1.1(b)(1), and because the offense involved methamphetamine which had been imported, the offense level was increased by another two levels pursuant to Guidelines § 2D1.1(b)(5). *Id.* After a three-level reduction for acceptance of responsibility, Defendant's total offense level was 31. *Id.* With a criminal history category of VI, the Guidelines imprisonment range was 188 months to 235 months. *See id.* at 22.

Prior to sentencing, Defendant's counsel raised several written objections to the PSR, including one to the two-level enhancement Defendant received under § 2D1.1(b)(5) for importation of methamphetamine.[1] *See* Obj. to PSR [44-3] at 1 (filed under seal). Counsel argued that Defendant was not aware that the instant offense involved the "unlawful importation of methamphetamine or the manufacture of methamphetamine from chemicals that were unlawfully imported into the United Sates." Supp. Addendum to PSR [44-2] at 1; Obj. to PSR [44-3] at 1. Counsel further objected to the 1 point increases to Defendant's criminal history

---

[1] The Guidelines authorize a two-level increase if:

> the offense involved the importation of amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals that the defendant knew were imported unlawfully . . . .

U.S.S.G § 2D1.1(b)(5).

4

score set forth in paragraphs 92, 93, 94 and 95 of the PSR, which added a total of four (4) points to Defendant's criminal history calculation. *Id*. Counsel argued that "Defendant was not represented by counsel and did not waive his right to counsel in those matters." Obj. to PSR [44-3] at 1. The probation office submitted a supplement to the PSR to reflect that Defendant was represented by counsel during those prior matters, and that the two-level enhancement for importation was correctly applied. *See* Supp. Addendum to PSR [44-2] at 2.

At the sentencing hearing, Defendant's counsel pursued the objection to the two-level importation enhancement, but withdrew the objection to the criminal history calculation, and under oath Defendant confirmed to the Court that he understood and agreed with his counsel's action. Sentencing Hearing Tr. [57] at 4-8. The Court ultimately overruled Defendant's objection to the importation enhancement and found that the "enhancement [was] supported by a preponderance of the evidence[.]" *Id*. at 9. The Court adopted the Presentence Investigation Report ("PSR") as its findings of fact. PSR [44]; Sentencing Hearing Tr. [57].

Defendant was sentenced to a term of imprisonment of 120 months as to Count 2 of the Indictment, and a concurrent term of 211 months as to Count 4 of the Indictment, for a total term of imprisonment of 211 months. Min. Entry, Nov. 19, 2018. The Judgment of Conviction [46] was executed and filed on November 20, 2018. J. [46] at 2.

On November 21, 2018, Defendant filed a Notice of Appeal [47] of his conviction and sentence to the United States Court of Appeals for the Fifth Circuit.

Not. of Appeal [47]. The Fifth Circuit rejected Defendant's arguments and dismissed his appeal because he "entered into a plea agreement waiving his right to appeal his conviction or sentence in this case." Op. [62] at 1.

Defendant filed his first Motion [64] to Vacate pursuant to 28 U.S.C. § 2255 on April 24, 2020. Mot. [64]. On May 4, 2020, the Court entered an Order [67] denying Defendant's Motion [64] without prejudice on the grounds that his deadline to "file a Motion to Vacate under 28 U.S.C. § 2255 is not until August 14, 2020." Order [67] at 1-2.

B.  Defendant's Motion [69] to Vacate

Defendant timely filed the present pro se Motion [69] to Vacate pursuant to 28 U.S.C. § 2255 on August 17, 2020, Mot. [69], less than a year after his conviction became final. 28 U.S.C. § 2255(f). Defendant raises two grounds for relief.

First, Defendant asserts that his guilty plea is "void . . . because this Court accepted it without advising Petitioner of the element requiring knowledge under 922(g)." Mot. [69] at 5. He maintains that the Court "failed to advise Petitioner on an element of the offense to which he pled guilty, the plea was not knowingly and intelligently made, and in turn, violated [the] Due Process clause under the Constitution and Fed. R. Crim. P. 11(b)(G)." *Id.* Defendant contends that the United States Supreme Court's subsequent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), applies retroactively to his case and that because he lacked the requisite mens rea, the factual basis supporting his guilty plea was "void." *Id.*

In *Rehaif*, the Supreme Court held that "in a prosecution under 18 U.S.C.

6

§ 922(g)(1) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. The Supreme Court applied the "knowingly" requirement to both the possession element and the status element. *Id*. Defendant contends that the Court accepted his guilty plea without "advising [him] of the element requiring knowledge" of his status, rendering his guilty plea invalid under *Rehaif*. Mot. [69] at 5.

Second, Defendant contends that he is entitled to relief on the grounds of ineffective assistance of counsel. Defendant claims that his counsel failed to object to several of his criminal history points in the PSR and failed to object to the two-level importation enhancement. Mot. [69] at 11-13.

Defendant's former counsel, James L. Farrior, III, has submitted an Affidavit [72] in which he states:

> [he] met with Mr. Williams, reviewed the PSR with him and discussed the priors. [He] filed objections to the priors which [Mr. Williams] requested, even though the PSR indicated that he had counsel in those matters. Mr. Williams did not request that [Mr. Farrior] file objections to the other priors, (in Paragraphs 87, 91 and 96), which the PSR indicated that attorney representation was unknown, since Williams advised me that he was in fact represented by counsel in those matters. Also, no points were assessed for Paragraphs 87 and 91. Further, even if counsel had filed an objection to Paragraph 96, and even if the Court had sustained that objection and reduced the number of points from 15 to 14, Mr. Williams criminal history would still be a Category VI.

Aff. [72] at 2.

The Government responds that *Rehaif* "does not impact the drug trafficking

7

…

…

guideline sentence" because Defendant does not claim "innocence nor does he claim that had [he] been advised of the knowledge element that it would have changed the result of the proceedings." Resp. [76] at 3. It maintains that Defendant's "sentence of 211 months imprisonment was . . . within the drug count [G]uideline[s] range of 188 months to 235 months," and was consistent with the Government's recommendation of the lower 50% of the Guidelines range as calculated by the Court for Count 4, possession with intent to distribute methamphetamine. *Id*. The Government further avers that Defendant waived "his right to collaterally attack his conviction" when he signed and agreed in open court to the Plea Agreement. *Id*. at 6.

In addition, the Government argues that Defendant did have knowledge of his status as a felon because the factual basis for the plea was read into the record at the change of plea hearing, and Defendant affirmed under oath that he agreed with the factual basis. Resp. [76] 6-7. With respect to Defendant's ineffective assistance of counsel claim, the Government maintains that there "is no reasonable basis" to concluded that Mr. Farrior "committed any unprofessional errors in his legal representation that would have led to any different result at trial." *Id*. at 6.

## II. DISCUSSION

A. <u>Legal standard</u>

Once finally convicted, there are four narrow and separate grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255: (1) the sentence was imposed in violation of the Constitution or

…

laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255; *see also United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992).

"[O]n collateral attack, a defendant is limited to alleging errors of a 'constitutional or jurisdictional magnitude.'" *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (quoting *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991)). Upon conviction and exhaustion of any right to appeal, courts presume that a defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164 (1982); *Shaid*, 937 F.2d at 231-32. Relief under 28 U.S.C. § 2255 is therefore reserved for violations of constitutional rights, and for a narrow range of injuries which could not have been raised on direct appeal which, if condoned, would result in a complete miscarriage of justice. *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

B. <u>Defendant's asserted grounds for relief</u>

1. <u>Insufficient factual basis for guilty plea as to Count 2</u>

The Supreme Court held in *Rehaif* that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 138 S. Ct. at 2200. Prior to *Rehaif*, the Government needed only to prove that the defendant was a felon at the time he possessed a firearm, and that he knowingly possessed the firearm.

9

Defendant contends that *Rehaif* applies retroactively to cases on collateral review. He maintains that because the Government did not prove that he had knowledge of his status as a felon and was thus barred from carrying a firearm, the factual basis supporting his guilty plea was insufficient to support the conviction in Count 2. Mot. [69] at 8.

Neither the Supreme Court nor the Fifth Circuit has addressed whether *Rehaif* applies retroactively to cases on initial collateral review, such as this one. The Third, Sixth, and Eleventh Circuit Courts of Appeals have addressed the issue within the context of applications seeking authorization for a second or successive motion to vacate under 28 U.S.C. § 2255(h). Each court has held that *Rehaif* is not retroactive under those circumstances because it did not announce a new rule of constitutional law. *See In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019) (per curiam) ("*Rehaif* . . . did not announce a new rule of constitutional law . . . [and] was not made retroactive to cases on collateral review by the Supreme Court." (citing *Tyler v. Cain*, 533 U.S. 656, 661-66 (2001))); *In re Sampson*, 954 F.3d 159, 161 (3rd Cir. 2020) ("*Rehaif* did not state a rule of constitutional law at all . . . ."); *Khamisi-El v. United States*, 800 F. App'x 344, 349 (6th Cir. 2020) ("The rule stated in *Rehaif* is a matter of statutory interpretation, not a 'new rule of constitutional law." (quoting *Palacios*, 931 F.3d at 1315)).

However, even if *Rehaif* did apply retroactively to cases on initial collateral review, it is clear from the Plea Agreement that Defendant waived his right to seek post-conviction relief on all grounds other than ineffective assistance of counsel

10

claims. *See* Plea Agreement [31]. A guilty plea knowingly and voluntarily entered effectively waives all non-jurisdictional defects in the proceedings up to that point. *Lantz v. United States*, 417 F.2d 329, 330 (5th Cir. 1969); *see also Henderson v. United States*, 395 F.2d 209, 210 (5th Cir. 1968). Where a defendant has waived the right to collaterally attack his conviction and sentence and there are new developments in the law, the Fifth Circuit has held that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *United States v. Barnes*, 953 F.3d 383, 387 (5th Cir. 2020), *cert. denied sub nom*. *Barnes v. United States*, No. 20-5432, 2020 WL 5883752 (U.S. Oct. 5, 2020) (quoting *Brady v. United States*, 397 U.S. 742, 757 (1970)).

A defendant need not "underst[and] all the possible eventualities that could, in the future, . . . allow[] him to challenge his conviction or sentence. His waiver only needed to be 'knowing,' not 'all-knowing.'" *Barnes*, 953 F.3d at 388. In other words, by waiving the right to seek post-conviction relief, a defendant "assume[s] the risk that he would be denied the benefit of future legal developments." *Id*. (quoting *United States v. Morrison*, 852 F.3d 488, 491 (6th Cir. 2017)).

District Courts in the Fifth Circuit to have addressed the *Rehaif* issue in this context and have uniformly concluded that waivers of such claims are enforceable. *See United States v. Lockett*, No. 3:18CR66TSL-FKB, 2020 WL 4760139 (S.D. Miss. Aug. 17, 2020) (denying defendant's § 2255 motion based on *Rehaif* because defendant had waived his right to seek collateral review in his plea agreement);

11

*United States v. Hutton*, No. 16-184, 2020 WL 5517332 (E.D. La. Sept. 14, 2020) (denying defendant's § 2255 motion because defendant had waived his right to seek collateral review of his conviction and sentence in a plea agreement and noting that defendant's claim under *Rehaif* was without merit); *United States v. Wilson*, No. 15-102, 2020 WL 5993158 (E.D. La. October 9, 2020) (noting that the Supreme Court did not make *Rehaif* retroactive to cases on collateral review and denying defendant's § 2255 motion because defendant waived his right to seek collateral review in his plea agreement).

Defendant contends that his waiver of post-conviction relief could not be knowing because he "could not previously raise these claims until *Rehaif* decision. Therefore, cause and prejudice is met." Mot. [69] at 7. Whether Defendant's waiver of post-conviction relief was knowing depends upon the law applicable at the time the waiver was made. *See Barnes*, 953 F.3d at 388. Defendant's argument is foreclosed by *Barnes* because the facts to which he agreed in his Plea Agreement [31] directly contradict his claim. Defendant was aware of the applicable law at the time he entered into the Plea Agreement, which did not require the Government to prove that he knew his status as a felon when he possessed a firearm.

During the Change of Plea Hearing, Defendant stated under oath that he had an opportunity to read and discuss the Plea Agreement and Plea Supplement with his counsel and to ask any and all questions he had about the Plea Agreement. *See* Change of Plea Hearing, Digital Audio File [34]; Tr. of Plea Hearing [60] at 9-10. He stated that he fully understood the terms of the Plea Agreement and Plea

12

Supplement, including the waivers. *Id*. The Government also reviewed with Defendant the highlights of the Plea Agreement and Plea Supplement, including the waiver of the right to seek post-conviction relief, and Defendant responded under oath that he understood and agreed with the terms of the Plea Agreement and Plea Supplement, including the waiver of post-conviction relief. Change of Plea Hearing, Digital Audio File [34]; Tr. of Plea Hearing [60] at 11.

The Court further inquired of Defendant whether he understood that he was waiving his right to seek post-conviction relief on any grounds whatsoever, other than ineffective assistance of counsel claims, and Defendant answered in the affirmative. Tr. of Plea Hearing [60] at 14-16 (filed restricted). The Court informed Defendant of the charges to which he was pleading guilty, namely that he had previously been convicted of a felony, and that he knowingly possessed a firearm which had been shipped and transported in and affecting interstate commerce. *Id*. at 24. The Court also informed Defendant of the additional charge to which he was pleading guilty, that he knowingly and intentionally possessed with intent to distribute five grams or more of methamphetamine. *Id*. Defendant responded that he understood the nature of the charges and the essential elements of the offenses charged in Counts 2 and 4 under the then-applicable law. *Id*. at 25-27.

Lastly, the Government read into the record the factual basis it was prepared to prove if the case proceeded to trial. The factual basis included that Defendant had previously been convicted of several felonies, including auto burglary in 2001, possession of a controlled substance in 2009, and two separate charges of transfer of

13

a controlled substance in 2011. Tr. of Plea Hearing [60] at 30. Defendant answered under oath that he understood and agreed with the factual basis read by the Government. *Id.* at 31.

Nothing in the record indicates that Defendant's guilty plea was not knowing, voluntary, or intelligent at the time he entered it, and his *Rehaif* claim is thus encompassed by the waiver. Defendant acknowledged under oath that he understood the rights he was waiving when he entered into the Plea Agreement and when he entered his guilty plea, and that he understood the essential elements of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) at the time. "Solemn declarations in open court carry a strong presumption of verity." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). Defendant's claim that his plea was not entered into knowingly and voluntarily is plainly belied by the transcript of the plea hearing and by the terms of the Plea Agreement, and his allegations find no factual support in the record.

The fact that the Supreme Court in *Rehaif* later interpreted 18 U.S.C. §§ 922(g)(1) and 924(a)(2) as requiring proof of Defendant's awareness of his status as a felon at the time he possessed the firearm does not change the knowing and voluntary nature of Defendant's waiver at the time of his plea. *See Barnes*, 953 F.3d at 387. This ground is foreclosed by Defendant's waiver in the Plea Agreement of the right to seek post-conviction relief under 28 U.S.C. § 2255.

2. <u>Ineffective assistance of counsel claim</u>

   a. Standard under *Strickland v. Washington*

Defendant's second basis for relief under 28 U.S.C. § 2255 is ineffective assistance of counsel. Mot. [69] at 10. The only exception contained in the Plea Agreement for seeking post-conviction relief was for ineffective assistance of counsel claims. *See* Plea Agreement [31]. The Sixth Amendment to the United States Constitution guarantees the right to the assistance of counsel in the sentencing process. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). Claims of ineffective assistance of counsel are properly asserted through a motion to vacate pursuant to 28 U.S.C. § 2255. *United States v. Gaudet*, 81 F.3d 585, 589 n.5 (5th Cir. 1996). To succeed on an ineffective assistance claim, a petitioner must demonstrate (1) that his counsel's performance fell below the objective standard of reasonableness, and (2) that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Failure to establish either prong—deficient performance or prejudice—defeats the claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

To establish deficient performance, a petitioner must overcome the strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690; *see United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012). To demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12

(2011). The Supreme Court has defined reasonable probability as "probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694).

In evaluating *Strickland* claims, admissions made under oath carry a strong presumption of truth, creating a "formidable barrier in any subsequent collateral proceeding[]." *Blackledge*, 431 U.S. at 73-74; *see also United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009). A defendant may not ordinarily refute his own testimony given while under oath at a plea hearing. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

b. Analysis

Defendant claims that his counsel was ineffective because he failed to "object to [Defendant's] criminal history VI, when several priors cannot count" towards the calculation of his criminal history. Mot. [69] at 10. He maintains that several of his prior convictions listed in the PSR are "too old and cannot be considered under § 4 A 1.2," and that the "others were impermissibly separated." *Id.* at 10-11. Defendant also avers that his counsel's failure to object to the two-level importation enhancement prejudiced him because it resulted in his ineligibility for early release. Mot. [69] at 11.

"Any [increase in] actual jail time has Sixth Amendment significance," and would constitute prejudice for purposes of *Strickland*. *United States v. Conley*, 349 F.3d 837, 842 (5th Cir. 2003) (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)). "Actual jail time" does not include mere eligibility for consideration for

early release where the defendant's offense level and Guidelines range would remain the same. *Compare Glover*, 531 U.S. at 209 (finding prejudice when defendant was sentenced under the incorrect Guidelines range based on an elevated offense level due to his counsel's erroneous sentencing calculation); *Conley*, 349 F.3d at 841 (finding prejudice when counsel failed to object to a 120-month sentence when the maximum applicable penalty under the statute was 60 months); *United States v. Franks*, 230 F.3d 811, 815 (5th Cir. 2000) (holding that the defendant was prejudiced when counsel failed to object to an improper enhancement which increased the overall offense level and Sentencing Guidelines range); *with Lockhart*, 474 U.S. at 60 (finding that counsel's erroneous advice as to parole eligibility did not prejudice the defendant and could not be considered ineffective assistance of counsel).

First, Defendant's claim that his counsel failed to pursue objections to the PSR based on his criminal history points is meritless. Prior to sentencing, Defendant's counsel raised several written objections to the PSR, including the 1 point increases to the criminal history score set forth in paragraphs 92, 93, 94 and 95 of the PSR, which added a total of four (4) points to Defendant's criminal history calculation. *See* Obj. to PSR [44-3] at 1. At the sentencing hearing, Defendant's counsel withdrew the objection to these 1 point increases to the criminal history score. *See* Sentencing Hearing Tr. [57] at 3-4. After the Court inquired as to Defendant's position on the objection, Defendant confirmed under oath that he agreed to withdraw that objection. *Id.* Defendant has not shown that

17

counsel's withdrawal of the objection to the criminal history score was contrary to his instructions or that Defendant did not acquiesce to the withdrawal of the objection to the criminal history score.  Defendant's claim that his counsel was ineffective for failure to raise an objection to his criminal points history has no merit.

Defendant also claims that his counsel provided ineffective assistance by failing to object to the two-level importation enhancement.  Mot. [69] at 11. Contrary to Defendant's assertion, his counsel lodged a written objection to the two-level importation enhancement in his objections to the PSR and pursued the objection at the sentencing hearing.  *See* Obj. to PSR [44-3] at 1.  Defendant's counsel submitted a sentencing memorandum prior to the sentencing hearing which, among other things, also included an objection to Defendant's two-level importation enhancement.  *See* Sentencing Hearing Tr. [57] at 4-8.  After hearing Defendant's counsel's objection to the two-level importation enhancement, the Court found that, based upon the statement from the case agent, the record, and relevant legal authority, the "enhancement is supported by a preponderance of the evidence[.]" *Id.* at 7-9.  The Court overruled Defendant's counsel's objection at the sentencing hearing.  *Id.*  The record is clear that Counsel's representation met the standard of reasonableness under *Strickland*.

Furthermore, Defendant has not demonstrated prejudice based on his counsel's performance.  Mr. Farrior stated in his Affidavit [72] that he met with Defendant and reviewed the PSR with him to discuss his prior convictions.  Aff. [72]

at 2. Mr. Farrior noted that he filed objections to the prior convictions, as Defendant had requested, even though "the PSR indicated that he had counsel in those matters." *Id*. Mr. Farrior further points to the record to note that he urged the Court to impose a sentence on par with the lower 50 percent of the Guidelines range, and the record reveals that, at the sentencing hearing, Mr. Farrior did make such a request. Sentencing Hearing Tr. [57] at 11.

In addition, even if the Court had not applied the two-level importation enhancement or ruled in favor of Defendant's criminal history score, Defendant has not shown that there is a substantial likelihood that the result would have been different. First, even if Defendant's criminal history points had been reduced from 15 to 14, his criminal history category would still have remained a Category VI. Aff. [72] at 2; PSR [44].

In addition, the Court stated on the record that it would have imposed the same sentence as a variance or non-Guidelines sentence based upon its evaluation of the relevant factors set forth under 18 U.S.C. § 3553. Sentencing Hearing Tr. [57] at 20. Thus, even if counsel performed as Defendant argues he should have, the outcome would not have changed, and Defendant cannot demonstrate prejudice under *Strickland*. In short, Defendant has not shown how counsel's performance was deficient nor has he shown that he was prejudiced. *See Strickland*, 466 U.S. at 687.

III. CONCLUSION

Because the Motion, files, and records conclusively show that Defendant is entitled to no relief, the Court finds that Defendant's Motion [69] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255, should be denied without an evidentiary hearing.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Julio Chantello Williams's Motion [69] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255, is **DENIED** without an evidentiary hearing.

**SO ORDERED AND ADJUDGED**, this the 30th day of December, 2020.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE